It's still morning. This is Cajeira versus Skrunda, I guess it is, sir? May it please the Court. My name is Paul Hoffman of Hoffman & Schweitzer, and I represent the plaintiffs' appellants in this matter, Carlos and Christina Cajeira. This is, as the Court, I'm sure, is aware, a longshoreman's claim under Section 905B of the Longshore Act, in which a motion for summary judgment was made by the defendants to dismiss the complaint, that there was no showing of negligence on the part of the defendants under Section 905B. Let me ask this. You make an argument in your brief that there was testimony from one of the stevedores or deckhands that there was a kink. I think the testimony was that there was a kink in the cable. The opponent says, no, the testimony, you're misrepresenting it, the kink was actually in the hose. If it's true that there was a kink in the cable, suggesting that the cable was defective and there may be a breach of the active control, assuming they were in control of the operation, could you point me to where the testimony substantiates, if I have it correctly, and maybe I don't, that there was a kink in the cable that was being used to secure the hose and not the hose that was in control only of the deckhands? I cannot point to a specific reference as I stand here, Judge, but if I may, I think that much to do is being made about what the evidence is or wasn't. And I don't mean to elide past that because it is an important thing, and one of the two aspects of our appeal is not only did Judge Wiginton create a new concept of law that there is a distinction between physical control and operational control under the active duty or active operations, syndia duty, but she also said that there was no evidence of negligence on the part of the ship, and that's what your question first goes to. And I would like to address that first and get back to the second aspect. I think the first aspect comes from what is the concept of negligence, and negligence involves duty, breach thereof, and injury. We do outline what the duty of the operator of the crane is, and it comes from Bosen Parfen's testimony and from the defendant's crane operations manual, which states, and thirdly from our expert Mitchell Stoler, who has great expertise in this field, which states that any crane movement shall be made in a smooth manner. Well, you're making a res ipsa loquitur argument, right? In essence, to take what you're saying and accept it, we have to say there was an accident, it must have been the crane, and if it was the crane, it must have been negligence. No, sir. I'm saying that it's not a res ipsa. I'm saying that there is evidence that starts with the affidavit of Mr. Kajara in the appendix at A453, for your reference, that he says on April 13th, 2009, at approximately 3 a.m., I was working on dock number three at Kinder Morgan while I was placing the last hose onto the dock. I was knocked into the water by the hose that I was working on. When the hose was suddenly, and without warning, lifted from the dock by the crane, which was being operated from the ship. I think his testimony was, abruptly, it just hit me. So, he wasn't looking at it, he was looking away, if I recall the testimony correctly, and there was a movement that was, to him, abrupt and knocked him over. So, if he didn't see what happened... He saw the hose, sir. He saw the hose. He didn't see the cable. He didn't see the crane. He was working with his head down on the hose. He saw the hose. It moved abruptly, knocked him over. So, how is it something other than res ipsa loquitur, if all he knows is something happened fast and it knocked me over? I don't want to take away, and sometimes we should be careful about arguing on a point. I don't want to take away the possibility of the res ipsa argument you're opposing, Judge, but I think that there's more than that. I think there's more than that. I think that you have the evidence from Mr. Kajara saying that the hose, and this is at 8301 of the appendix. He says that the hose was still a load on the crane at all times. That means that the crane wire was suspending the hose at all times. But you had Mr. Kajara muscling the hose, as he said, his shoulder against it, and you had the other fellow on the other end of the hose pulling. Pulling, correct. And if the fellow stopped pulling, you could go back. Say it again, sir. If the fellow stopped pulling, the hose could move back towards Mr. Kajara. That could have been the operative cause. That could be, and that would be a question of fact, that maybe it was the negligence of the men on the pier. But they both, the men on the pier, both say, no, we were pulling at the time, and Mr. Kajara was pushing. So then you have Mr. Kajara saying the hose lifted, which caused him to be propelled back. What's your evidence of negligence from that? Assuming that the ship at that point had active control of the operation of stowing the hose, which we'll get to in a minute, but assuming that for a moment, what's your evidence that the crane operator did something he should not have done? The evidence is that the crane operator, first, under the duty that we started explaining, is that the hose and the load should be moved in a smooth manner. Second, it was the crane's job to move this hose in, let me just swing my arm, in this direction, so that they could lay the hose down on the pier. The testimony, for instance, from Mr. Southard at page A687 says, was it moving, was the hose, question, was it moving or was the hose being lowered? Answer, the hose was supposed to be lowered, but it started moving, and it only takes a little movement of a crane to make a hose with that product and to make the motion in that way. On the next page, he says, I'm sorry, the reference is A687, and I'm going to A688, where he says, I saw the hose stop and swing at us, making me think they stopped the crane and reversed it. Question, so you believe they stopped the crane and the hose moved? Answer, either that or they stopped it and jerked it back to the left. That would make the hose swing also, and the way it did, having done this before, that's what I felt happened. So if the motion, to answer your question, Judge Jordan, if the motion was supposed to be in this way, in a smooth manner, it stops and jerks back or lifts up, which is not the intended motion, that was the result of the actions of Mr. Parfins, the operator of the crane. And the assertion is that had to be negligent. If that motion really was the result of the crane, and there is some question about that, then it had to be that it was a negligent thing that was done. That's the assertion, right? Well, clearly that's a jury question. Would the movement of a crane in a way that was not anticipated, not desired, and was counter- You just said not desired. That's the really important point I'm trying to get you to. Because the evidence from the other side here is, we're operating a crane, we're taking directions from them. They're the ones in charge of stowing the hose. They've let their own crane go bad for more than six months, so we're doing them a favor, letting them use our crane, and we're just taking directions from them. And all I'm doing is following the directions they're giving me. That's their assertion of the facts. So help me with if the negligence, if it's negligence, assuming it's even negligence to reverse the swing of that crane and so the hose, if that's somebody following the directions of the stevedoring company, how are we to assume that it's negligence for them to do that? Well, clearly if one of the three men on the pier gave a signal to that crane, reverse the direction of the crane, then I would agree. But there's no evidence. Nobody says we told them to do anything. What we have evidence is that the three men were tugging on this hose to get it to come this way, and Mr. Kajara's on the other side pushing to go this way, and all of a sudden it stops and reverses. So there was no order by these three men, and certainly there's no evidence in the record that Judge Wiginton could have found to say that this order to reverse it and knock Mr. Kajara into the water was given by one of the three men on the pier. There's no evidence of that. So you have to take the circumstantial evidence that it was supposed to go this way, and it stopped and went back the other way or lifted up and knocked Mr. Kajara into the water. You have to take that as circumstantial evidence that somebody did something wrong with the operation of the crane, and that's what the argument on the negligence is. It's a pure jury question. Who did what to whom? And isn't it correct that there was signals going from the stevedoring personnel to personnel of the ship owner who was then signaling the crane operation? Correct. So there was an intermediary there. And that's a good point, Judge Van Aske. There could have been miscommunication or an improper error in a command by Mr. Gaudens, who was the seaman that was on the rail looking down. Now, he's the one with the control of the crane. He's telling the crane operator, move this way, come up, go down. Now, he says, I'm just taking directions, but that's not the job of the signal man. The signal man has to give correct, safe commands. And if he gave an unsafe command, then that could be found by the jury. He's the employee of the vessel? He's the employee of the vessel. That's right. So that takes us to the point of who actually has got operational control here. Correct. If it's the case, as your opponents say here, that, look, all we did was take direction from them. We said we'd help them stow their hose. I suppose they could have said, we'll see you later and shoved off and let you guys stow your own hose. Well, they had to disconnect those hoses first. But, you know, they're being nice guys, right, helping you with the stowing of the hose. And their assertion is, we don't control the dock. We don't control the hose. We don't control the employees. We don't have anything to do with that. All we're doing is saying, okay, you tell us how to move this thing back and forth, this crane cable, and we'll do that for you as you direct us. I guess that's what you described as Judge Wiginton making a distinction between physical and operational control. He might have had his hand on the button, but the control of the operation in its entirety was in the hands of the Stevedore & Company according to the ship. What's erroneous or misleading or wrong about the way they're describing the reasoning that we should follow? I think that the reasoning fails when you look at the language that both parties rely on from Davis versus Port Lyon Transport. And that's, the court there says, stated differently, the evidence must be such that the finder of fact could conclude that the vessel exercised control or took charge of an area either because it did not turn exclusive control of the area over to the Stevedore, which is point one that I think is relevant here, or to the Stevedore, but retained substantial control or because the vessel substantially interfered by invitation or otherwise with the Stevedore's exercise of exclusive control by actively intervening in the area. Here they were invited to actively intervene and move the hoses. Now, they had to move these hoses. You're saying that's Gordans on that second point? I'm sorry, sir? You're saying that the second point comes to light here via Gordans' instructions to the crane operator? No, it comes into being by the fact that by invitation the ship agreed to use its crane to move this hose, which was all part of the Stevedoring operation. They couldn't sail this ship until those hoses were off the ship. They had to do something with them, and they couldn't dump it into the water, because then that would be a pollution violation and they'd all be in jail. So, therefore, they had to safely get these hoses out of here. This is Philly, right? Well, this was actually in New Jersey. That's not a state that we have any pollution. For polluting the waters in New Jersey? People go to jail for that? My goodness. I think Judge Wiginton went further astray, Judge Jordan. We'll stop for a second because you've just made an assertion I want to question you about. You've said that clearly that's a substantial interference, by invitation perhaps, but a substantial interference with the Stevedore's exercise of exclusive control. I think, you know, I don't want to speak for your opposing counsel, and he'll be up here in a minute, Mr. Walsh, to, I guess, speak for himself, but wouldn't the response to that be, we're just doing what you told us. We're not interfering in any logical sense of the word with your stowage operation. We are facilitating it at your direction, your movement-by-movement direction. If we could, we'd let you come up here and run the crane yourself, but, you know, you say go right, I'm pushing the button, go right. You say go left, I'm pushing the button, go left. If that's not interfering, I'm only doing what you're telling me to do. That's their view of it. I understand. So give me, if that is actually what happened, how does that constitute, quote, substantial interference, unquote? Well, you're also missing the actively intervening language of Davis. Judge Jordan, they substantially and actively intervened. It was their crane that lifted this cargo hose and swung it over and negligently, as we believe the evidence would support to a rational jury, that they negligently did this swing operation. I'm giving you the negligence piece. Okay, I understand. I'm giving you the negligence piece. I'm trying to get at the who's responsible for any negligence there, and they're saying, I take it, if there's any negligence at all, it's on the Stevadorian Company because they controlled that operation. They were given the directions. It was their hose. They knew how to stow the thing. We were only doing what they asked us to do, movement-by-movement. How is that? Use intervening as opposed to interfering. They didn't interfere. They intervened. They certainly were invited to do this work, and it was their equipment. Would that be a question of fact for the jury to answer? Oh, absolutely. It is a question of fact. Isn't that the answer? Well, I'd like to give a simple answer, but I think Judge Oren wants something a little more substantial. He likes simple answers. We all like simple answers. He's asking you questions. If I may just point out on that, sir, if you look in our reply brief, we cite to a case out of the Second Circuit in which they pinpoint that part of the act of operation involves also the use of the shipowner's equipment. Once the shipowner's equipment is involved, once it's involved, it's the shipowner's equipment. It's like driving a car. If you borrow somebody's car and you're behind the wheel, you have the obligation to drive that car safely. So by definition, any time the ship's equipment is being used, the act of operations duty is in play is the view of the plaintiff. Right, and it could be joint control. I'm not saying that all of a sudden it becomes totally the shipowner, but here we had two elements. We had longshoremen working on the pier. We had the ship people, the man at the rail, the man at the controls, and the ship's equipment. So it's a joint operation. Now, I did not say it, Your Honor, and I did tell the clerk that I would reserve three minutes. I don't know if he so did, but I see my time on direct is up. All right. Why don't we end this part of it and let your colleague speak. I appreciate that. Thank you. Good morning, Your Honor. John Walsh for the defendant at the lead, if it pleases the court. Judge Wiginton correctly decided our motion for summary judgment on a very simple basis, that there is no evidence whatsoever that either the signalman or the crane operator did anything wrong. Are you conceding the active operation issue? Can I get into that, Judge? Yeah. Judge, the active control in Davis concerns a condition on the ship. The Davis facts were there was ice and stuff on the deck of the ship, which remained within the active control of the ship, and therefore the ship was responsible for it. This didn't happen on the ship. What about prior? Say again, Judge. What about prior? What about prior? How do you pronounce it? Was it the ladder? Plewyer? Plewyer with the feet on the ladder? Right. Well, a very similar situation where it was the ship's ladder that they were using and they didn't have feet. They didn't have rubber feet on. We're not dealing with the condition of the ship here. We're dealing with an operation in which the ship was involved. So we really have to talk about – Well, why would that be that big of a distinction? If you're talking about an operation on the ship, no problem. The vessel owner is responsible for that. But here you don't have a condition on the ship, but you have a series of actions on board the ship. Let's assume for a second that the vessel owner is directing or choreographing those actions. Why should the law make a distinction there if the end result is the duty to the stevedore remains the same? You're correct, Your Honor. If the ship owner is supervising and directing the operations, there is an act of controlled duty, and they have the obligation of reasonable care in supervising. There's no evidence of that in this case. Well, what about Godin? That's why I asked my question about Godin. Roddens was following the orders of the stevedores. He was following – there's no question about that. They were relaying orders. We know for a fact that his – it's like the old game of gossip. We know what he told the crane operator to do. It's the same as if the stevedores told him. We do know that, and the answer is yes. He followed every signal from the shore and conveyed it to the bosun who was operating the crane, and the crane followed – bosun operating the crane followed Godin's signals. If I could get back to the act of – what we have the obligation to do here, Your Honor, is that we have the obligation to use reasonable care to the extent we are involved in the operation. We are partially involved in the operation. So the crane operator has to operate that boom smoothly, right? You can see that. Exactly, Your Honor. He's in active control of the movement of the wire and of the boom. He has the obligation to use reasonable care. Right. There's a problem with the crane that he doesn't know about. You can see he's in active control of the movement of the crane. Well, he's in active control of the crane. Correct, Your Honor, but he's not in active control of the operation, and that's different. Back up a second. Operation of what? Operation of lowering the hose because, remember, not only are they taking directions. He's in active control of the crane, but he's not in active control of the thing the crane is controlling. That's what you're arguing. He's in active control of the crane, but he is following the orders of the people on the shore. He physically runs the crane. One person who represents the boat, the vessel, Godin's. Grounds and the boats are both on the ship. They're both crew members. Well, let's try it this way. Maybe we can just boil it down to Newton's First Law. If the hose is moving continuously and fluidly in one direction, and it's moving that way because one guy, Kahara, is pushing, and the other two guys are pulling, and the other two guys say, I consistently are pushing. The other two guys are saying, I consistently pushed. Kahara is saying, I consistently pulled. Unless Newton's been wrong all these years, something else had to act on that hose for it to jerk. Well, Newton's Law is definitely implicated here, Your Honor, because they are pushing in a different direction than the hose is going. The hose is going from south to north. They are pushing west. When they started pushing, I thought everything was moving in the same direction, and then it jerked. No, no. They needed to get that hose away from the water. That was the problem. Right. So they start pushing it away from the water, and it's moving away from the water, pushing and pulling at the same time. The hose is flying into the forest, and then it jerks. Well, okay, jerks is one of the phrases that's been used, but Groudon's testified that he saw one of the guys let go. So there's a fact. Let's do this on a jury issue. It's not a jury issue, Your Honor, because the inferences are equal on each scenario. In other words, it could have been the crane. Nobody saw the crane jerk. No one. Everybody was focused on the hose. The only person who saw the crane. Wouldn't it be a jury question if they said, if the Stevedore employees all say, we never let go of that hose, so it couldn't have been us. It could only have been the operation of the crane, and your people say, well, we were just following orders, you know. It couldn't have been us. They must have given us misdirection. I mean, isn't it for a jury to say, you know what? We think the Stevedore guys are more honest. We like them better. We think they are more credible witnesses. We don't think they let go. We think they were monkeying around with the crane, and they're blaming it on them. Isn't that like classic go to the jury? No, Your Honor. If you look at the court's opinion in Fedorchik, and the site to that is 82 Fedford 69, if there is not direct evidence of causation, you cannot infer from an opinion that there was negligence. So that there is no direct evidence of what caused this hose to come. Circumstantial evidence? I guess I just got to put it to you, as I did to Mr. Hoffman. If nothing else makes that hose jump, Sir Isaac is still in play, as the Chief Judge said. Is it not one of those circumstances where a jury can say, the only rational explanation is an abrupt movement of the crane? Your Honor, that is one inference, but if there's other equally probable inferences, it can't go to the jury. Yeah, but that's my concern. You've got the pusher saying, we pushed consistently and smoothly. The puller saying, I was pulling consistently and smoothly. Now some of that testimony is contradicted, because you've got one person saying, we saw one of these guys push and let go. But the pushers are saying, we didn't let go, we continued to push. Unless I'm wrong on the testimony, that's the testimony. If that's what happened, something again caused that hose to jerk. It had to be the crane operator. Well, that's an inference, Judge. That's not direct evidence. It's an inference. That's the inference that put the Mars lander on the moon. And then on top of that inference... It's more than an inference, it's a basic fact. But on the top of that inference, now you're going to infer that the crane operator did something wrong, or the grouters did something wrong. I'm assuming that the jury could have believed, as my colleague Judge Burton said, the jury could choose to believe the two guys were pushing who said, we continued to push, we never stopped. They could believe Cajera, who would say, I continued to pull, I never acted abruptly. Something happened to make the hose jerk. I think everybody agrees, at some point, the rate of acceleration of the hose changed, it jerked. Maybe it was because of the cable, maybe it was because of one of the pushers or pullers letting go. But the testimony that the jury could believe is, the pushing was fluid, the pulling was fluid, something else acted on that hose to make it abruptly change its direction. And it had to be the crane. No, it could have been the guys letting go. I just told you. Let's assume the jury believed the guys were pushing who said, they didn't let go, they continued to push. But you can't put that to the jury, Judge, if there's other reasonable inferences. That's my point. I guess you're finding a little bit of disbelief on our part, because cases go to the jury all the time when one person says, I didn't punch that person, and the other person says, you did punch that person. I mean, there's a difference of opinion about who did what, and it goes to the jury. I mean, isn't the argument that you, or at least I thought you were making in your briefing, I've now misread it, was there's no evidence that even if the thing moved more abruptly than people expected, that that movement was the result of some negligent behavior by the crane op. Correct, Your Honor. That is my argument. There's two hurdles that he has to overcome as a plaintiff. One is that the crane was the cause of the accident, and the second thing is whether negligence on the part of the crew caused the crane to move that way. Okay. So what's the basis of the argument that assuming the movement, abrupt the movement of the hose, was the result of crane operation in some fashion, that it wouldn't be, it would be inappropriate for the jury to have that and think about whether that meant negligence or not. Well, it's a res-if-so argument, Your Honor. Okay, and why, precisely. Okay. And why is that the wrong argument? It's the wrong argument for two reasons, Judge. First, the crew was not in exclusive control. Res-if-so locator requires that the defendant be in exclusive control of the situation. That wasn't happening here. Secondly, and this Court has ruled in Hill v. Ray Derry, I don't have the site with me, but it requires that the third-party fault and plaintiff fault be ruled out, and that can't be ruled out here, Judge. The terminal did a lot of things wrong here. First thing, the most important thing they did wrong, they didn't have tag lines. Tag lines are as old as long shoring. Tag lines, you use the tag lines attached to the hose to pull the hose in the direction where you want it to go. They didn't use it. The day after the accident, they used it. They didn't have any procedures. Whose responsibility was for tag lines? Tag lines were the shore responsibility because it was a shore hose and the plaintiff had to grab the hose. So it should have been done with tag lines. And under the Long Shore Act, the employer, the terminal operator, has the primary duty of care to the- But how would the aspect of contributory negligence function into that? Does it work under the law of the sea? Well, the way it works is that the plaintiff, any contributory negligence, it's comparative negligence. It's pure comparative negligence. Twenty percentage of the plaintiff's fault reduces his damages. Now, if the ship is partially responsible and the stevedore is partially responsible, the ship becomes responsible for the stevedores because the stevedores is immune from under the- Okay, well, why wouldn't that resolve the issue of the tag lines then? Well, the issue of the tag lines is that that was the cause of the accident. I mean, and the thing is, it goes back to- That was what? I'm sorry. That was the cause of the accident. Okay, well, not an approximate cause. Had the boat not sailed, that would have been the cause. Well, I think it was an approximate cause, Your Honor, but it goes back to my res ipsa locator argument that you have to rule out third-party fault in order to make the defendant responsible under the res ipsa rationale. I'm troubled with that, again, because of the testimony. And there's a contradiction in the testimony, but if the jurors were to believe the testimony most favorable to the plaintiff here, that people were pulling and they did that in a consistent manner without any jerky or abrupt action, then all of a sudden the hose jerked. The only other force on that hose, in addition to the pushing and the pulling, is the crane. If you eliminate the pushing and the pulling because the jury accepts that testimony, they've got to conclude it jerked because of the force exerted by the crane. That gets to the liability of the vessel. Well, Judge, I think that the precedent in this circuit doesn't allow this to go to the jury, but the other reason is that you still have one more hurdle to jump, and that is how does that prove that the crane operator was negligent or that the signalman was negligent? It doesn't. Allowing the hose to jerk? Well, again, why wouldn't that be a jury question? The fact that the hose, he allowed the hose to jerk, knowing that this guy, these three people were down at the end of that hose, and it must be, it's a 10-inch diameter hose. It's got to weigh an awful lot. If the hose, if the crane operator operates that hose in a manner that he could foreseeably see would cause injury to one of the guys at the end of that hose, why wouldn't that establish the negligence if he jerks it, if he reverses direction with it? There are other inferences that can be drawn, Judge. Such as what? We're dealing with a ship that's moored in a very busy waterway. Ships move even when they're moored, and the crane could have moved because of the movement of the ship. The crane could have had a hiccup or some kind of a, you know, malfunction that the ship never even faced before. So there's no, you know, notice of any defective condition on the crane, and therefore there would be no negligence. You can't infer from just the happening of the accident the negligence of the defendant without a res ipsa locator type of analysis, which is not proper here. Your Honor, just to conclude my argument, under Anderson v. Liberty Lobby, where the facts are so one-sided, summary judgment should be entered in favor of the defendant, and the facts are very one-sided. The cause of this accident was definitely a stevedore fault. I've already gone through some of the factors. In addition to the tag lines, the dock was congested, too congested for him to be safe for the stevedores. The grating was bent. This guy tripped over the grating. He was too close to the edge of the dock. And since the fault here is so one-sided and there's really no evidence of negligence on the part of the crane operator or the signalman, the court should affirm Judge Wiggins. Thank you. Thank you, Judge. Your Honor, at this point, which I had not thought of, I was assuming the only forces here are the pushing, the pulling, and the load on the crane. But he's right. The boat could have moved. This is not a fixed crane. We're talking about a 700-foot ship in a protected waterway in a river. But it got there, didn't it? So it moves. Boats move. Okay, boats move. And if a boat is sitting, no matter how big it is, if it's sitting on water and there's a wave, the boat will move. We may not perceive the motion. It might be too small to see it, but the boat is going to move. All that is true, but there's no evidence here that there was any boat movement. If that's a defense that they're going to raise after God, then that would be something they'd raise. There's so many other explanations that you've got to at least have enough evidence to make it more likely than not that the negligence here goes to the crane, or I guess the guidons, and not to somebody on the hose letting go, or the plaintiff himself pushing or pulling in a jerky way. There's got to be something to leave it to something more likely than chance. And that's why I ask that, and I think that's why Mr. Martin. I hear what you're saying. But I think that we're now speculating way beyond. We're talking about, as I said, a 700-foot oil tanker that is not going in a protected waterway, is not going to be moving sufficiently that you'd get the violent motion that propelled my client several feet over the pier and into the water. Well, one potential response to that is that it's actually the plaintiffs that are asking for speculation, that the plaintiffs are in fact making a case-absolute argument. The hose moved, so it had to have been negligence by the crane operator. If that is, in fact, your argument, that there's no other potential cause, then isn't any other potential cause enough to knock you out of the box? Oh, absolutely not, Judge. This is a jury question as to what would the jury find to be reasonable or not. But before you can get to the jury, you've got to have evidence of negligence. And your evidence of negligence is the hose moved. No, the evidence of negligence is the hose was supposed to be moving in a smooth, controlled manner. It stopped. I apologize. It moved abruptly. It moved improperly. Right. It moved abruptly, and that is your evidence of negligence, right? Do you have anything else? It was always moving. It's the motion that was not reasonable, not anticipated, that it either jerked backwards or went up, which would have to have been related to the actions of the crane operator. Got you. Okay. And I think, Judge McKee, you started to ask about the Serbin case, and I've got four seconds. But I think the Serbin case is very similar here. There you had a hatch where there were longshoremen who were doing their job of unloading, and there was a snatch block that the ship operator put over the hatch such that it was in the way of the men to do their longshoring job. So they took it upon themselves to move the snatch block out of the way, and one man hurt his back, I believe it was. That was actions by the longshoremen to move that snatch block that was negligently left in the way. So you had dual action. You had the ship owner negligently, and the Third Circuit said the jury could find that it was negligent for the ship owner and it was under its control, and you had the longshoremen physically moving that snatch block that the ship owner negligently put into place, and he was injured. So a very similar, in fact, pattern to what we have here, and the Third Circuit found that that was under the act of control and a jury could find negligence. Thank you. Thank you.